# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 17-cv-02487-CMA

DAVID L. PERKINS,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

---

## ORDER AFFIRMING THE DENIAL OF BENEFITS
---

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff David L. Perkins's application for widower's benefits under Title II of the Social Security Act. Jurisdiction is proper pursuant to 42 U.S.C. § 405(g).

Plaintiff argues that the administrative law judge's ("ALJ") conclusion that Plaintiff failed to establish a common law marriage to a decedent who died as a fully insured individual under the Social Security Act was erroneous. (Doc. # 13.) Because the ALJ's analysis was supported by substantial evidence and because the ALJ used the correct legal standards, the Court rejects Plaintiff's arguments and affirms the decision of the Commissioner.

## I.     BACKGROUND

**A.     PLAINTIFF'S APPLICATION AND INITIAL DENIALS**

Plaintiff filed an application for widower's benefits of the deceased wage earner, Carolyn J. Seawell, on February 27, 2014. (Doc. # 9 at 39–40.)[1] Plaintiff stated in his application that he and Ms. Seawell were married on May 1, 1979, in Colorado, and remained married until Ms. Seawell's death on August 29, 1992, also in Colorado. (*Id.* at 40.)

The Social Security Administration initially denied Plaintiff's claim on March 9, 2014, stating that "[t]he facts . . . d[id] not show" that Plaintiff and Ms. Seawell were married under the laws of the state where Ms. Seawell lived when she died. (*Id.* at 46–47.) Plaintiff, represented by counsel Larry Daves, *see* (*id.* at 49–50), requested reconsideration of the agency's determination on March 17, 2014, and explained that he had a common law marriage with Ms. Seawell until her death. (*Id.* at 50–51.) Upon reconsideration, the Administration again determined that Plaintiff was "not entitled as the common law spouse of Carol Seawell" to widower's benefits. (*Id.* at 57–59.)

Plaintiff requested a hearing before an ALJ on May 7, 2014. (*Id.* at 63–66.) ALJ Earl W. Shaffer conducted the hearing on April 27, 2016, in Pueblo, Colorado. (Doc. # 9-1 at 189–226.) Plaintiff and Betsy Rich, Ms. Seawell's sister, testified, and Plaintiff's counsel was present. (*Id.*)

---

[1] All of the exhibits filed Doc. # 9 and Doc. # 9-1 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (e.g., Doc. # 9) and the page number from the Administrative Record (e.g., at 39–40).

2

**B.     THE EVIDENCE BEFORE THE ALJ**

Plaintiff explained to the ALJ—and still maintains—that his first marriage, to Roberta Price, "broke up in 1977," and in 1978, he and Ms. Seawell began a romantic relationship.  (Doc. # 9-1 at 182.)  In late 1978, they moved into the house Ms. Seawell had been living in.  (*Id.*)  Plaintiff stated:

> Shortly after my divorce with Roberta Price was finalized in 1979, [Ms. Seawell] and I had a discussion in which we mutually agreed that from that point on, we would live together and present ourselves as husband and wife and all that that entails.  We both understood that we were commencing on a common law marriage.

(*Id.*); *see also* (*id.* at 199–202, 208–09.)  Plaintiff and Ms. Seawell lived for the entirety of their relationship in the "Libre Community," a 360-acre collective community founded in 1968 "as a not for profit Colorado corporation for the . . . purpose of building and developing a [sic] artistic community."  (*Id.* at 194.)  He explained that the residents of the Libre Community "were there to build a whole new world from scrap basically, . . . we were counter culturist, . . . or hippies would be another way to look at it. . . .  [W]e didn't have resources.  We . . . basically took a vow of poverty."  (*Id.* at 213.)  Plaintiff also testified that between 1980 and 1986, he helped raise Ms. Seawell's son, Bo Seawell, in their residence in the Libre Community; that Bo had been born in California to Ms. Seawell and Brent Seawell; and that Ms. Seawell believed that she had previously been in a common law marriage with Mr. Brent Seawell.  (*Id.* at 206, 211–12.)

Ms. Rich, Ms. Seawell's sister and a resident of the Libre Community, also testified.  (*Id*. at 221–25.)  She explained to the ALJ that she and others in the Libre

Community annually receive property tax assessments in their names from Huerfano County, Colorado, and that they then pay those taxes. (*Id.* at 221–22, 225.) Upon Plaintiff's counsel's questioning, Ms. Rich testified that she believed that Ms. Seawell was married to and lived with Plaintiff. (*Id.* at 223–24.) She also stated that Ms. Seawall "wasn't always" in her right mind when she was ill at the end of her life and had no explanation for why Ms. Seawall did not address her marriage to Plaintiff on her application for Social Security disability insurance benefits. (*Id.* at 224.)

Plaintiff provided documents in support of his contention that he and Ms. Seawell had a common law marriage. The ALJ accurately summarized this documentary evidence:

> To support his allegations, the claimant provided copies of vehicle purchase agreements and vehicle registration, titling, and insurance records that he and the claimant purchased, owned, and/or renewed together [(Doc. # 9-1 at 126–38)]. He also provided copies of annual tax receipts of property tracts in the "communal" community, Libre, in which they lived. These tracts each were titled individually in the decedent's name, the claimant's name, and that of an individual named "Meyer," which the claimant stated he also paid [(*id.* at 145–79)]. Additionally, he provided a copy of a bank signature card in the name of the decedent, with the claimant's name seemingly added in later, given that it was typewritten in [(Doc. # 9 at 28)]. He also provided a copy of the decedent's death certificate and a copy of the claimant's obituary, each of which lists the claimant as the husband of the decedent [(*id.* at 29–30)]. He provided a Power of Attorney form, in which the decedent gave the claimant full authority to act on her behalf on all personal, financial, and legal affairs [(Doc. # 9-1 at 106–07)]. He provided copies of motel receipts, indicating the decedent used the claimant's surname [(*id.* at 141–44)]. The claimant also provided statements from various members of the communal community where the decedent and the claimant lived, including statements from the claimant's sister [(Doc. # 9 at 80–81)], son [(*id.* at 82–83)], and former significant other/husband/father of son [(*id.* at 76–77)], each of whom indicated that the claimant and the decedent lived as husband and wife.

(Doc. # 9 at 19 (internal citations replaced with citations to the Administrative Record).)

Finally, the ALJ also had before him evidence that Ms. Seawall had applied for Social Security disability insurance benefits on June 23, 1992, approximately two months before she passed away.[2] (*Id.* at 24–27.) On that application in 1992, Ms. Seawall listed Mr. Brent Seawell as her spouse and indicated that they were married in 1965 by clergy or a public official in California. (*Id.* at 25.) She stated that she was currently married to Mr. Brent Seawell at the time of her application, that her marriage to Mr. Brent Seawell had not ended, and that she did not have any other marriages. (*Id.*)

## C. THE ALJ'S UNFAVORABLE DECISION

The ALJ issued an adverse decision on June 9, 2016, concluding that Plaintiff failed to meet the eligibility requirements for widower's benefits because Plaintiff had not put forward evidence sufficient to prove that he and Ms. Seawell had a common law marriage prior to her death. (*Id.* at 13–23.) The ALJ specifically found that there was scarce evidence that Ms. Seawall "mutally and openly assume[d] a marital relationship" and that Ms. Seawall's failure to make any "mention of the [Plaintiff] being her spouse or common law husband" in her application for Social Security disability insurance benefits was "[m]ost compelling." (*Id.* at 21.) He rejected Plaintiff's documentary evidence as establishing only "[t]he fact that the decedent and the claimant lived in a communal environment," and that "they shared or commingled resources, in this case automobile resources." (*Id.* at 19.) The documents were "no[t] concrete evidence that the two held themselves out as husband and wife." (*Id.*)

---

[2] Ms. Seawall's actual application is not included in the Administrative Record; only a summary is included. The Commissioner states that this is "likely due to its age." (Doc. # 15 at 3 n.1.)

**D.     THE INSTANT ACTION**

Plaintiff requested that the Appeals Council expeditiously review the ALJ's decision on June 14, 2016.  See (*id.* at 7.)  He submitted additional information about his alleged "financial and physical distress" and described the Social Secuirty Administration's treatment of him "a callous way to treat senior citizens who are already dealing with so much pain, anguish, and uncertainty." (*Id.* at 8–10.)  The Appeals Council decided on August 30, 2017, that Plaintiff's argument "[did] not provide a basis for changing the [ALJ's] decision" and denied Plaintiff's request for review.  (*Id.* at 4.)  When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981; *see Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

Plaintiff filed the instant action against the Commissioner of Social Security on October 18, 2017.  (Doc. # 1.)  After the Commissioner filed the Administrative Record (Doc. ## 9–9-1), Plaintiff submitted his Opening Brief on January 22, 2018.  (Doc. # 13.)  The Commissioner responded in support of the ALJ's decision on February 20, 2018 (Doc. # 15), to which Plaintiff replied on March 4, 2018 (Doc. # 16).

## II.     STANDARD OF REVIEW

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards." *Smith v. Barnhart*, 57 F. App'x 406, 408 (10th Cir. 2003); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

First, the Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). "Substantial evidence is more than a scintilla, but less than a preponderance . . . ." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "A finding of '"no substantial evidence" will be only where there is a "conspicuous absence of credible choices."'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Second, in addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v.*

*Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). Additionally, a reviewing court need not defer to an ALJ's interpretation of state law. *Smith v. Barnhart*, 57 F. App'x at 408.

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III.     ANALYSIS

**A.     LEGAL STANDARDS GOVERNING WIDOWER'S BENEFITS**

The Social Security Act provides for a "widower's insurance benefit" for "[t]he widower . . . and every surviving divorced husband of an individual who died a fully insured individual," provided the widower or divorced husband satisfies several conditions. 42 U.S.C. § 402(f)(1); *see* 20 C.F.R. § 404.335. "Widower" is defined in part as "the surviving husband of an individual" if "he was married to her for a period of not less than nine months immediately prior to the day on which she died." The Administration looks "to the laws of the State where the insured had a permanent home when . . . she died" to "decide [the applicant's] relationship as the insured's . . . widower." 20 C.F.R. § 404.345; 42 U.S.C. § 416(h)(1)(A)(i). If the applicant was not

8

validly married to the insured individual under that state's laws, the Administration nevertheless deems the applicant to be the widower of the insured individual "if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the take of such property as a . . . widower of such insured individual." 42 U.S.C. § 416(h)(1)(A)(ii).

"Colorado is . . . one of several states, along with the District of Columbia, that still recognize common law marriage."[3] *In re Marriage of J.M.H. and Rouse*, 143 P.3d 1116, 1117 (Colo. App. 2006). Under Colorado law, a common law marriage is established by (1) "the mutual consent or agreement of the parties to be husband and wife," and (2) "a mutual and open assumption of a marital relationship." *People v. Lucero*, 747 P.2d 660, 663 (Colo. 1987).

The party asserting a common law marriage carries the burden of proof, *id.* at 664 n.6, and the evidence must be "clear, consistent and convincing," *Emp'r Mut. Liab. Ins. Co. of Wis. v. Indus. Comm'n*, 234 P.2d 901, 903 (Colo. 1951). As to the first element, the consent or agreement "need not have been in words," *Smith v. People*, 170 P. 959, 960 (Colo. 1918), and "may be inferred from evidence of cohabitation and general repute," *Lucero*, 747 P.2d at 664. The party may rely on "any form of evidence" that manifests both parties' intent to be married:

> Our formulations of the requirement of conduct manifesting or confirming the parties' understanding or agreement have taken many forms. . . . The two factors that most clearly show an intention to be married are

---

[3] In a common law marriage, "two persons create a valid marital relationship without the benefit of a legal marriage ceremony performed according to statutory requirements." *In re Marriage of J.M.H. and Rouse*, 143 P.3d 1116, 1118 (Colo. App. 2006) (citing Denise K. Mills, *Common Law Marriage in Colorado*, 16 Colo. Law 252 (Feb. 1987)).

cohabitation and a general understanding or reputation among persons in the community in which the couple lives that the parties hold themselves out as husband and wife. Specific behavior that may be considered includes maintenance of joint banking and credit accounts; purchase and joint ownership of property; the use of the man's surname by the woman; the use of the man's surname by children born to the parties; and the filing of joint tax returns. . . . However, there is no single form that any such evidence must take. Rather, any form of evidence that openly manifests the intention of the parties that their relationship is that of husband and wife will provide the requisite proof from which the existence of their mutual understanding can be inferred.

*Id*. at 665 (citations omitted). The determination of whether a common law marriage exists "turns on issues of fact and credibility." *Id.*; *accord Pertile v. Gen. Motors, LLC*, No. 15-cv-01518, 2017 WL 2559218, *2 (D. Colo. June 13, 2017) (citing Brenda L. Storey, *Defending Against A Common Law Marriage Claim*, Colorado Lawyer, March 2005, at 69 ("Common law marriage claims are fact-driven, and no single set of facts is required to prove or defend against such a claim.")).

The Social Security Administration has its own regulation concerning evidence of a common law marriage. 20 C.F.R. § 404.726. Where, like here, either the husband or wife is dead, the Administration prefers as evidence "the signed statements of the one who is alive and those of two blood relatives of the deceased person." 20 C.F.R. § 404.726(b)(2). The Administration may consider "other convincing evidence of the marriage" if the preferred evidence is unavailable. 20 C.F.R. § 404.726(c).

**B.    APPLICATION**

   1.    <u>Whether Plaintiff and Ms. Seawell Had a Valid Common Law Marriage</u>

Plaintiff's primary argument is that the ALJ's conclusion was incorrect—that he established he had a common law marriage with Ms. Seawell prior to her death. (Doc.

# 13 at 13–25.) The Court concludes that the ALJ's determination that Plaintiff failed to show the first essential element of a common law marriage, "the mutual consent or agreement of the parties to be husband and wife," *Lucero*, 747 P.2d at 663, was supported by substantial evidence.

### a. Ms. Seawell's 1992 application for Social Security disability insurance benefits

Ms. Seawell's application for Social Security disability insurance benefits alone constitutes such substantial evidence. *See* (Doc. # 9 at 24–27.) As the Court described above, just two months before her death, Ms. Seawell stated on the application that she married Mr. Brent Seawell in 1965 and was still married to him and that she had had no other marriages. (*Id.* at 25–26.) There is no mention of Plaintiff in the summary of Ms. Seawell's application for benefits. Ms. Seawell's application was presumably signed, as is required for filing, 20 C.F.R. § 404.610(c); Program Operations Manual System ("POMS"), GN 00201.010, GN 00201.115. Ms. Seawell also presumably declared under penalty of perjury that the information on her application was true and correct to the best of her knowledge when she filed her application, also required for filing. POMS, GN 00201.015. Ms. Seawell's application therefore amounts to a signed, sworn statement by her mere months before her death in which she declared that was married to Mr. Brent Seawell and had had no other marriages. Such a sworn statement is substantial evidence that Ms. Seawell did not (1) mutually consent or agree to live as husband and wife with Plaintiff, and (2) mutually and openly assume a marital relationship with Plaintiff; in short, it is substantial evidence that Plaintiff did **not** have a common law marriage with Ms. Seawell.

Plaintiff's argument that the ALJ "totally rejected" his other evidence concerning Ms. Seawell's application for disability insurance benefits fails to persuade the Court that the application does not constitute substantial evidence in support of the ALJ's conclusion. *See* (Doc. # 13 at 17–18, 24–25.) Plaintiff relies on Mr. Brent Seawell's "affidavit . . . denying that he and [Ms. Seawell] were ever married," *see* (Doc. # 9 at 76–77), to cast doubt on Plaintiff's application for disability insurance benefits. (Doc. # 13 at 17.) But as the ALJ ably explained, Mr. Brent Seawell's statement does not suggest anything more than the fact the **he** did not believe he was ever married to Ms. Seawell; it says nothing about Ms. Seawell's understanding of their relationship, which is dispositive. *See* (Doc. # 9 at 22.) Ms. Seawell's application is evidence that she believed herself to be married to Mr. Brent Seawell at the time of her death. Evidence that she permanently assumed Mr. Brent Seawell's name, had a child with him, gave the child Mr. Brent Seawell's surname, and jointly purchased property with Mr. Brent Seawell also suggests that Ms. Seawell believed herself to be married to Mr. Brent Seawell. *See* (*id.*) The ALJ correctly stated that because Ms. Seawell "believed she was in an ongoing, common law marriage with Mr. [Brent] Seawell, she would not have had the requisite intent" to be in a common law marriage with Plaintiff "and could not have had it." (*Id.*) Mr. Brent Seawell's statement does not undermine this logic.

b. *Statements from Ms. Seawell's acquaintances*

As to the other evidence Plaintiff submitted, Plaintiff argues that the ALJ's decision was wrong because the statements of Mr. Bo Seawell, Ms. Seawell's son, *see* (Doc. # 9 at 82–83), and Ms. Rich, Ms. Seawell's sister, *see* (id. at 80–81), were

12

"overwhelming evidence" of Plaintiff's and Ms. Seawell's "agreement to take each other in marriage." (Doc. # 13 at 15.)

This argument reflects Plaintiff's misunderstanding of the Court's standard of review. The question the Court now faces is **not** whether there was **any** evidence that supported Plaintiff's application for widower's benefit. The question is rather whether the ALJ's decision was supported by substantial evidence—that is, whether it was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted). The Court "may not reweigh the evidence," *Glass*, 43 F.3d at 1395, and it "may not 'displace the agency's choice between two fairly conflicting views,'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200)). Under this "quite narrow" standard of review, *see U.S. Cellular Tel. of Greater Tulsa L.L.C. v. City of Broken Arrow*, 340 F.3d 1122, 1133 (10th Cir. 2003), it is irrelevant that some evidence, such as the statements from Ms. Seawell's family members and acquaintances from the Libre Community, may support Plaintiff's position. Having found that the ALJ's decision was supported by substantial evidence (including Ms. Seawell's 1992 application for benefits), the Court may not reweigh that evidence against other any other evidence.

### c. The ALJ's alleged bias

Plaintiff next argues that "[t]he ALJ manifested a bias in his assessment of the evidence" from the beginning of the hearing through his written decision. (Doc. # 12 at 20–21.) He contends that the ALJ's decision "[bore] the unlawful taint" of the ALJ's "bias and hostility based upon an erroneous belief that [Plaintiff] and [Ms. Seawell] had a communal rather than monogamous relationship." (*Id.* at 20, 21 n.7.) Plaintiff's claim of bias is based on the ALJ's assessment of his documentary evidence. (*Id.* at 20–25.) For example, Plaintiff asserts that the ALJ "erroneously found they did not have a joint bank account although [Plaintiff] provided a copy of a joint banking account at the First Bank of Walsenburg." (*Id.* at 23.) The ALJ's explanation of this evidence was, in full:

> [Plaintiff and Ms. Seawell] did not have a joint banking account. While [Plaintiff] provided a copy of a bank signature card for a joint checking account, with right of survivorship, [Ms. Seawell] never signed the document ([Doc. # 9 at 28]). The apparent account also was not opened until August 18, 1992, or some two weeks prior to [Ms. Seawell's] date of death. This does not establish that [Plaintiff and Ms. Seawell] had a mutually agreed upon marital relationship beginning in 1979 or 1980.

(Doc. # 9 at 20.) The Court sees no evidence of bias in the ALJ's treatment of this and other documentary evidence, and Plaintiff fails to allege any conflict of interest or other specific type of bias. *See Schweiker v. McClure*, 456 U.S. 188, 197 (1982) ("We must start . . . from the presumption that the hearing officers . . . are unbiased. This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification.").

Plaintiff's real complaint seems to be that the ALJ did not view the evidence in a light more favorable to him. *See Isom v. Schweiker*, 711 F.2d 88, 90 (8th Cir. 1983)

14

(rejecting the plaintiff's allegation of bias by the ALJ that was based on "negative comments" by the ALJ about the plaintiff's evidence). That does not amount to error under the 'substantial evidence' standard of review.

2. <u>Whether Plaintiff Was the Putative Spouse of Ms. Seawell</u>

The Social Security Administration recognizes that under the putative marriage laws of some states,[4] "a party to a void marriage may acquire inheritance rights as a spouse" and therefore be eligible for widower's benefits. POMS, GN 00305.085; *see* 42 U.S.C. § 416(h)(1)(A)(ii); 20 C.F.R. § 404.346. Colorado is one such state that recognizes putative spousal rights:

> Any person who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. . . . A putative spouse acquires the rights conferred upon a legal spouse.

Colo. Rev. Stat. § 14-2-111.

Plaintiff's final argument is that alternatively, he is "entitled to widower's benefits as the putative spouse of the insured under Colorado law."[5] (Doc. # 13 at 26–28.) First, Plaintiff reasserts that he "satisfied the elements required for a common law spouse, including cohabitation." (*Id.* at 27.) Second, he reasons that he "satisfie[d] the

---

[4] The essential basis of a putative marriage is a good faith belief in the existence of a valid marriage at its inception and a continuous good faith belief (in a life case) or good faith until the worker dies (in a death case). The marriage may be invalid because of some defect of which the putative spouse was unaware, such as a prior undissolved marriage of one of the parties, or failure to meet the requirement of solemnization.

POMS, GN 00305.085.

[5] Plaintiff did not advance this theory to the ALJ. (Doc. # 9-1 at 99–104.) The Court nonetheless will address it, as it may be interpreted as an argument that the ALJ made an error of law.

15

requirement of a good faith belief he was married to [Ms. Seawell]." (*Id.*) He states that he and Ms. Seawell "had consulted with an attorney who advised them that [Ms. Seawell] did not have a common law marriage to Brent Seawell because California does not recognize common law marriage." (*Id.*) Plaintiff therefore believes that he was the putative spouse of Ms. Seawell and is entitled to widower's benefits on that basis. (*Id.* at 28.)

Unfortunately, Plaintiff could not establish the first element of a common law marriage, the mutual consent of Ms. Seawell. Therefore, Plaintiff was not the putative spouse of Ms. Seawell because he did not have a valid marriage to begin with. Plaintiff does not cite any authority suggesting that a Colorado court would apply the putative marriage statute in this circumstance. Moreover, the Commissioner is correct that "Plaintiff's interpretation of the putative marriage statute would, in effect, eviscerate the key requirement of common law marriage because a party would no longer be required to prove mutual consent in order to obtain the benefit of a common law marriage; instead, one party's belief in the marriage would suffice." (*Id.* at 11 n.7.) The ALJ did not make any legal errors by not discussing putative spousal rights.

The Court therefore concludes that the ALJ's analysis was supported by substantial evidence and that the ALJ employed correct legal standards.

### IV. CONCLUSION

For the foregoing reasons, it is ORDERED that the ALJ's denial of widower's benefits is AFFIRMED.

16

DATED: July 23, 2018

BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge